UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ARROW FINANCIAL SERVICES, LLC,

                Plaintiff,

       -against-

ABRAHAM S. MASSIL,

                Defendant.
----------------------------------------------------------------X
ABRAHAM S. MASSIL,

                Third Party Plaintiff,

       -against-

ARROW FINANCIAL SERVICES, LLC and
PROVIDIAN NATIONAL BANK,

                Third Party Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

08-cv-437 (NGG) (VVP)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ FEB 17 2009 ★
BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

      Defendant Abraham S. Massil ("Defendant" or "Massil") allegedly defaulted on a credit card debt owed to Providian National Bank, later succeeded in interest by Washington Mutual Bank (the "Bank" or "Third-Party Defendant"). The Bank assigned the debt to Plaintiff Arrow Financial Services, LLC ("Plaintiff" or "Arrow"), a debt collection agency. Arrow then brought suit against Massil in New York City Civil Court in Queens County seeking to collect the outstanding balance of $8,172.32, with interest. In Massil's Answer, he asserted counterclaims against Arrow, and identical claims against Third-Party Defendant, the Bank. Massil argues that he never incurred the credit card charges and that they appeared on his statement in error. He claims that the Bank ignored his consistent protests of the charges and "fraudulently and

1

maliciously assigned the allegedly outstanding charges" to Arrow, who in turn filed suit "despite the lack of any basis for the charges," causing emotional distress to him and his family. (Docket Entry # 1, Answer, Counterclaim, and Third-Party Complaint ("Third-Party Complaint") ¶ 6-7.)[1] Massil also claims that Arrow and the Bank violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1962 et seq., "by, inter alia, continuing debt collection activities after Massil disputed the debt without first providing verification of the debt, and repeatedly telephoning Massil regarding the charges at inconvenient times." (Id. ¶ 14.)

The Bank removed the case to the Eastern District of New York pursuant to 28 U.S.C. § 1441, asserting federal question jurisdiction and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332. Before the court are the Bank's Motion to Dismiss the third-party claims, and Massil's motion to amend his third-party complaint. (Docket Entries # 14, 20.)

The court finds that because it lacks subject-matter jurisdiction over the action, it cannot rule on the pending motions. The case is therefore REMANDED to the state court.

I. Discussion

a. Subject-Matter Jurisdiction

The Bank removed the case to federal court pursuant to 28 U.S.C. § 1441, asserting that Massil's third-party claims for alleged violations of federal law established federal question jurisdiction under 28 U.S.C. § 1331, as well as diversity jurisdiction under 28 U.S.C. § 1332. No party has attacked the validity of the court's jurisdiction. In so doing, they attempt to avoid an extensive debate waged in the jurisprudence and the scholarship over whether third-party defendants, such as the Bank, have the right to remove cases at all on the basis of claims asserted in a third-party complaint.

---

[1] Though no authority is specified for this claim in the Third Party Complaint, the Bank characterizes this claim as encompassing violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et. seq., the Truth in Lending Act ("TILA"), 15 U.S.C § 1601 et seq., or a combination of the two. (See Docket Entry # 14, Mot. to Dismiss 2.)

2

Due to the continuing obligation of the court to ensure its own subject-matter jurisdiction, the court undertakes the analysis sua sponte. See United Food & Commercial Workers Union Local 919 v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994) ("[I]n our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.") (quoting Manway Constr. Co. v. Hous. Auth. of Hartford, 711 F.2d 501, 503 (2d Cir. 1983)); Mignogna v. Sair Aviation, Inc., 679 F. Supp. 184, 186 (N.D.N.Y. 1988) (addressing the propriety of Section 1441 removal by a third-party defendant in the absence of motion to remand, "since the subject-matter jurisdiction of the court is implicated" by the question.).

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) (adding that federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree") (internal citations omitted). As a fundamental precept, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). The original complaint filed by the Plaintiff in this action is a simple debt collection suit. It raises no federal question under the "well-pleaded complaint" rule of Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908), which dictates that "federal question jurisdiction exists only when the plaintiff's own cause of action is based on federal law" as demonstrated on the face of a "well-pleaded complaint." Marcus v. AT&T Corp., 138 F.3d 46, 52 (2d Cir. 1998). Regardless of the citizenship of the parties, the Complaint seeks $8,172.32, an amount radically shy of the amount-in-controversy requirement necessary for diversity jurisdiction. (See Docket Entry #1, Compl.); 28 U.S.C. § 1332 (where the parties are citizens of different states, "[t]he district courts shall have original jurisdiction of

all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. . ."). The only conceivable basis for subject-matter jurisdiction would be the Third-Party Complaint.

In the Second Circuit, "[i]t is clear, . . . that the jurisdiction of the district court over the claims of the plaintiffs is not enhanced by third party complaints." In re Agent Orange Prod. Liab. Litig., 635 F.2d 987, 990 n.6 (2d Cir. 1980) (rejecting the argument that subject-matter jurisdiction could be established by impleading the United States). Other Circuit courts have similarly held that the presence of a third-party complaint generally cannot confer subject-matter jurisdiction where it does not otherwise lie. See Adkins v. Illinois Cent. R. Co., 326 F.3d 828, 835-36 (7th Cir. 2003) (where "an original, stand-alone lawsuit against [a third-party defendant] would fall within the original subject matter jurisdiction of the federal court . . . . [w]e must consider whether the existence of a third-party complaint affects the court's subject matter jurisdiction over the original action. We conclude that it does not."); California *ex rel.* Lungren v. Keating, 986 F.2d 346, 348 (9th Cir. 1993) (case could not be "transformed into an action 'arising under' federal law" and rendered eligible for removal "by action of a defendant"). The Supreme Court has not specifically ruled upon the question, though it has held that defenses and counterclaims arising under federal law cannot be sufficient to confer federal question jurisdiction. See Mottley, 211 U.S. at 152-54 (federal question jurisdiction exists "only when the plaintiff's statement of his own cause of action shows that it is based upon those laws [of the United States] or that Constitution," and cannot be invoked by a defense based on federal law); Holmes Group, Inc. v. Vornado Air Circ. Sys., Inc., 535 U.S. 826, 831 (2002) ("It follows [from the well-pleaded complaint rule] that a counterclaim – which appears as part of the defendant's

answer, not as part of the plaintiff's complaint – cannot serve as the basis for 'arising under' jurisdiction.").

The court finds itself powerless to entertain the suit before it unless the removal statute, 28 U.S.C. § 1441, might be read to clarify or expand the court's subject-matter jurisdiction into the realm of third-party complaints. Therefore the inquiry is quintessentially a jurisdictional one, and the court has the responsibility to proceed with the Section 1441 analysis before it can reach the merits of the case.[2]

### b. Removal by Third-Party Defendants under 28 U.S.C. § 1441

Neither the Supreme Court nor the Second Circuit has determined whether the right to remove a case to federal court set forth in 28 U.S.C. § 1441 extends to third-party defendants. In the absence of binding precedent, "[t]he judicial debate over the question of third-party removal has raged for years," and culminated in a majority view among courts and commentators that third-party defendants may not remove a case. Fed. Ins. Co. v. Tyco Int'l Ltd., 422 F. Supp. 2d 357, 372 (S.D.N.Y. 2006) (collecting cases regarding third-party removal under § 1441(a) & (c)); see also Wright, Miller, & Cooper, 14C Fed. Prac. & Proc. Juris. 3d § 3731 (noting that plaintiffs cannot remove when a counterclaim is asserted against them, and "nor can third-party defendants brought into the state action by the original defendant exercise the right of removal to the federal court"). My colleagues in the Southern and Eastern Districts

---

[2] The Third Circuit has held that because "Section 1441 is a procedural rather than a jurisdictional statute," a district court lacks the power to address the question of third-party defendant removal in the absence of a timely motion to remand. Roxbury Condominium Ass'n, Inc. v. Anthony S. Cupo Agency, 316 F.3d 224, 227-28 (3d Cir. 2003) (deeming removal by third-party defendant a "procedural defect" and identifying the inquiry as "non-jurisdictional"). When the question of third-party removal, however, constitutes a determination of the court's underlying subject-matter jurisdiction, a rule barring sua sponte consideration cannot be correct. Since the court appears to lack original jurisdiction over the action, the inquiry before the court is not merely procedural. Litigants "cannot waive subject matter jurisdiction by express consent, conduct, or estoppel because they 'fail[ ] to challenge jurisdiction early in the proceedings.'" United Food, 30 F.3d at 303 (quoting Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)). The interpretation of Section 1441 directly addresses whether there exists any statutory authorization that might permit subject-matter jurisdiction in this case.

of New York have unanimously found that 28 U.S.C. § 1441 does not permit removal by third party defendants. Id. (citing cases); see also Casul v. Modell's N.Y. II, Inc., No. 04-cv-7204, 2004 WL 2202581, at *2 (S.D.N.Y. Sept. 30, 2004); Crawford v. Hosp. of Albert Einstein Coll. of Med., 647 F. Supp. 843, 846 (S.D.N.Y. 1986); Knight v. Hellenic Lines, Ltd., 543 F. Supp. 915, 917 (E.D.N.Y. 1982). Nonetheless, the court has examined the relevant authority to reach its own conclusions.

The right to remove a case to federal court is a statutory right, established by 28 U.S.C. § 1441. The Supreme Court's seminal decision in Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941), requires federal courts addressing removal to "scrupulously confine their own jurisdiction to the precise limits which the statute has defined" in order to honor the "power reserved to the states under the Constitution to provide for the determination of controversies in their courts." Id. at 108-9 (internal citations omitted) (recognizing that the state power to hear cases "may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution"). As a rule of interpretation, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994).

Section 1441 of Title 28 of the U.S. Code provides, in pertinent part:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . .

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the

> citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.
>
> (c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

The Bank's Notice of Removal does not invoke Section 1441(a), but some discussion of that provision is useful to understanding the relevant jurisprudence and statutory framework. There is a wealth of authority establishing that third-party defendants may not remove cases pursuant to Section 1441(a). See Palisades Collections LLC v. Shorts, 552 F.3d 327, 333 (4th Cir. 2008) ("For more than fifty years, courts applying Shamrock Oil have consistently refused to grant removal power under § 1441(a) to third-party defendants . . ."); Tyco, 422 F. Supp. 2d at 372-77 (analyzing Section 1441(a) against the "vast sea of authority strongly suggesting that third-party defendants have no statutory right to remove cases"); Hayduk v. UPS, 930 F. Supp. 584, 590 (S.D. Fla. 1996) (observing that "[n]early every court that has considered the question whether third-parties may remove under § 1441(a) has determined that they may not."). Courts interpreting Section 1441(a) have overwhelmingly held that the meaning of the term "defendant" in the statute does not encompass third-party defendants. Relying on the strict construction mandated by Shamrock Oil and the legislative history surrounding removal, these courts hold that the phrase "may be removed by the defendant or the defendants" must "be interpreted narrowly, to refer to defendants in the traditional sense of parties against whom the plaintiff asserts claims." Id. at 373 (quoting First Nat'l Bank of Pulaski v. Curry, 301 F.3d 456, 462-463 (6th Cir. 2002), and citing the series of additional arguments in favor of this interpretation);

7

Knight v. Hellenic Lines, Ltd., 543 F. Supp. 915, 917 (E.D.N.Y. 1982) (noting that "judicial authority and the commentators have squarely rejected the view that a defendant in a third-party action is a 'defendant' under § 1441(a)"). Given that the Bank does not seek authority to remove pursuant to Section 1441(a), and the weight of the case law opposing its appropriation by third-party defendants, the court concludes that the action could not have been properly removed under Section 1441(a).[3]

In its Notice of Removal, the Bank claims authority to remove according to subsections (b) and (c) of 28 U.S.C. § 1441. The Bank's invocation of Section 1441(b) is of little consequence because subsection (b) simply supplements subsection (a) by declaring that where federal question "arising under" jurisdiction exists, removal authority is granted "without regard to the citizenship or residence of the parties," and limiting removal based upon diversity jurisdiction to cases where "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b); see, e.g., Brown v. Organon USA Inc., No. 07-cv-3092(HAA), 2008 WL 2625355 at *5 (D.N.J. June 27, 2008) (noting that the latter part of § 1441(b) "essentially acts as a limitation on the types of defendants that may remove and was designed to preserve the plaintiff's choice of forum state, under circumstances where it is arguably less imperative to provide a federal forum to prevent prejudice against an out-of-state party.").

The minority of courts that have extended removal rights to third-party defendants have done so on the basis of Section 1441(c). Section 1441(c) allows that where "a separate and independent claim or cause of action" presenting a federal question "is joined with one or more

---

[3] The invocation of Section 1441(a) may also fail because it allows removal only where "the district courts of the United States have original jurisdiction," and this court seriously doubts that jurisdiction could be premised solely on a third-party complaint under controlling precedent. 28 U.S.C. § 1441(a) (emphasis added). See Palisades Collections, 552 F.3d at 334 n.3 (recognizing a similar argument, but declining to reach the question because it found the interpretation of the term "defendant" dispositive).

8

otherwise non-removable claims or causes of action, the entire case may be removed." 28 U.S.C. § 1441(c). The Courts of Appeals and district courts are generally split on the question of whether Section 1441(c) makes removal available to third-party defendants subject to "separate and independent" claims. Compare Lewis v. Windsor Door Co., 926 F.2d 729, 733 (8th Cir. 1991) (denying third-party defendant removal rights and holding that "[w]e do not ... believe § 1441(c) was intended to effect removal of a suit, not otherwise within federal jurisdiction, because of the introduction of a third-party claim.") and First Nat'l Bank of Pulaski v. Curry, 301 F.3d 456, 465 (6th Cir. 2002) (similarly restricting removal rights under Section 1441(c)) with Carl Heck Eng'rs, Inc. v. Lafourche Parish Police Jury, 622 F.2d 133, 136 (5th Cir. 1980) (permitting third-party defendant removal where "the third party complaint states a separate and independent claim which if sued upon alone could have been properly brought in federal court"); see also Cook v. Wikler, 320 F.3d 431, 436 n.6 (3d Cir. 2003) (declining to rule on the question); Thomas v. Shelton, 740 F.2d 478, 487-88 (7th Cir. 1984) (refusing third-party right to remove under Section 1441(c) but "hesitat[ing] to adopt a universal and absolute rule" that third-party defendants may never remove a case). The Second Circuit has yet to address the debate. See Tyco, 422 F. Supp. 2d at 372 n.12.

    c. The Bank's Assertion of Federal Question Jurisdiction and Removal Pursuant to 28 U.S.C. § 1441(c)

In support of its position that Section 1441(c) confers removal rights in this case, the Bank cites to two cases from the Northern District of New York: Mignogna v. Sair Aviation, Inc., 679 F. Supp. 184 (N.D.N.Y. 1988) and New Venture Gear, Inc. v. Fonehouse, 982 F. Supp. 892 (N.D.N.Y. 1997). In Mignogna, the district court diverged from the "majority of courts" and the "leading commentators on federal jurisdiction" to find that removal rights must extend to third-party defendants under Section 1441(c), because "to adopt an inflexible rule barring

9

removal by third-party defendants, . . . would have the curious effect of making a litigant's right to have a claim heard in a federal forum turn on the fortuity of being sued in a third-party complaint rather than in a separate action." 679 F. Supp. at 187-88, 189. Nonetheless, the court remanded the case, holding that removal was impermissible under Section 1441(c) because the third-party claim, a contribution claim, was not "separate and independent" from the plaintiff's personal injury suit. Id. at 190-91. New Venture Gear described Mignogna's holding as "a limited exception to the general rule that only the original defendant may remove by allowing a third-party defendant to remove an entire action pursuant to 28 U.S.C. § 1441(c)," but similarly remanded the case before it on the grounds that the third-party claim was not in fact "separate and independent." 982 F. Supp. at 893.

To the contrary, courts in the Southern and Eastern Districts of New York "uniformly prohibit removal by third-party defendants." Crawford v. Hosp. of Albert Einstein Coll. of Med., 647 F. Supp. 843, 845 (S.D.N.Y. 1986). These courts reason that "[t]he joinder of claims to which § 1441(c) refers is solely the joinder in the complaint by the plaintiff. The principle is that if a plaintiff has not joined a 'separate and independent claim' by him which is removable, then no defendant in any cross-claim thereafter filed has any right of removal." Id. at 846 (quoting Verschell v. Fireman's Fund Ins. Co., 257 F. Supp. 153, 154 (S.D.N.Y. 1966) (emphasis in original)). This interpretation rejects the idea that subsection (c) "expands the universe of removable actions," and instead serves merely to clarify that in cases removed on the basis of federal question jurisdiction, the district court retains discretion to either adjudicate or remand any other nonremovable claims. St. Vincent's Hosp. of Staten Island v. Taylor, No. 07-cv-0967(ILG)(JO), 2007 WL 2325073 at *4 (E.D.N.Y. Aug. 10, 2007); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 354 (1988) (explaining that Section 1441(c) "dealt with the

10

situation in which a claim that would be removable if sued upon alone is joined with one or more 'separate and independent' claims that are not themselves removable," and provides that in those circumstances, "the entire case may be removed and that the district court, in its discretion, may either adjudicate all claims in the suit or remand the independently nonremovable claims."). As a result, these courts hold unequivocally that "third party defendants have no right to remove claims under § 1441(c), even if they are separate and independent." Id.; see also Casul 2004 WL 2202581, at *2.

This case presents no compelling reason to depart from this well-settled rule of the district. The federalism concerns evoked in Shamrock Oil and its progeny strongly militate against removal by third-party defendants, where, as here, no original jurisdiction exists over the case and the sole basis for subject-matter jurisdiction is premised upon a third-party complaint. See, e.g., Thomas, 740 F.2d at 487 ("To allow removal of an entire suit on the basis of a third-party claim is to bring into the federal court an action the main part of which is not within that court's original jurisdiction, and is thus to enlarge federal at the expense of state jurisdiction in rather a dramatic way."); Korea Exch. Bank, N.Y. Branch v. Trackwise Sales Corp., 66 F.3d 46, 50 (3d Cir. 1995) ("[T]he Supreme Court clearly suggested, even if it did not directly hold, that it does not view the removal statute as imposing independent jurisdictional restrictions on the federal courts.").

Furthermore, it is apparent that even if a "limited exception" could be crafted to permit third-party defendants to remove pursuant to Section 1441(c), the Third-Party Complaint in this action does not present a "separate and independent" claim. See St. Vincent's Hosp., 2007 WL 2325073 at *4 (holding that in the absence of a separate and independent claim, third party could not remove regardless of the court's interpretation of Section 1441(c)). The Supreme Court has

long held that "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." American Fire & Cas. Co. v. Finn, 341 U.S. 6, 14 (1951); Gardner & Florence Call Cowles Foundation v. Empire Inc., 754 F.2d 478, 481 (2d Cir. 1985) (invoking the Finn test). The Second Circuit has confirmed that "Finn reads 'separate and independent claim or cause of action' as a reference not to the variety of legal theories advanced but to the underlying occurrence or occurrences giving rise to the litigation." Gardner, 754 F.2d at 481-82.

In this case, the claims in Plaintiff's original complaint and Defendant's third-party complaint clearly revolve around the same primary facts, forming "an interlocked series of transactions" under Finn. Plaintiff's claim in this case sought to collect a debt of $8,172.32 from defendant Massil, which had been assigned to it by the Bank; the alleged violation of a federal statute, the FDCPA, raised in Massil's third-party complaint is based upon Plaintiff and the Bank's "continuing debt collection activities after Massil disputed the [$8,172.32] debt without first providing verification of the debt, and repeatedly telephoning Massil regarding the charges at inconvenient times." (Docket Entry # 1, Third Party Compl. ¶ 14.) Massil's broader claim, recast by the Bank as potential violations of the FCRA and/or TILA, see note 1 supra, alleges that the Bank "fraudulently and maliciously assigned the allegedly outstanding charges" to Arrow "despite the lack of any basis for the charges." (Id. ¶ 6-7.) Massil's defense to the original Complaint seeking to collect the debt is that the debt was never incurred by him, never verified, and repeatedly protested. The facts undergirding the debt collection claim asserted in the Complaint are thoroughly interwoven with these third party claims.

In its Notice of Removal, the Bank attempts to recast these events, arguing that "Massil's allegations of credit reporting and/or debt collection improprieties by [the Bank] prior to Arrow

12

Financial's purchase of his account from [the Bank] in May 2005, and which directly identify or implicate federal law, constitute 'a separate and independent claim or cause of action' that is distinct from Arrow Financial's original debt collection claim, commenced in October 2007." (Id. at ¶ 8 (emphasis in original)).[4] This bifurcation of events is a fallacy. Each part of the suit regards the same sequence of operative facts, involving the accrual and pursuit of the delinquent credit card debt allegedly owed by Massil to the Bank. The Bank's assignment of its claim to Arrow (and Arrow's later initiation of the lawsuit) cannot obscure the fact that the entire case revolves around the dispute over this relatively modest, basic debt. Regardless of the outcome of the debate over the threshold applicability of Section 1441(c) to third-party defendants, it is clear that the circumstances present in this case do not qualify for removal under this provision.

### d. The Bank's Assertion of Diversity Jurisdiction

The Bank also asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), claiming that Massil is a New York resident, the Bank is a "federally chartered savings association whose home office is located in the State of Nevada," and Arrow is a Delaware company headquartered in Illinois. (Docket Entry # 1, Notice of Removal ¶ 9.) Diversity actions are "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." See 28 U.S.C. § 1441(b) (emphasis added). As discussed supra, the majority of courts interpreting the removal statute agree that the term "defendants" should be read literally and narrowly. Given that Massil, the defendant in this action, is a resident of New York, removal from the New York City Civil Court to this court would be barred upon the same

---

[4] The Bank's citation to Doherty v. Citibank (South Dakota) N.A., 375 F. Supp. 2d 158, 161 (E.D.N.Y. 2005) for the proposition that a FDCPA claim may be "separate and independent" from an action for credit collection is misleading, and wholly inapposite to the Section 1441(c) analysis before the court. (Id.) In that case, the district court denied a motion by a pro se plaintiff to remand on the purported grounds that his action was not "separate and independent" from another lawsuit brought against him in state court. Doherty, 375 F. Supp. 2d at 161. The court explained that this information was irrelevant, stating that "[t]he fact that there is a separate civil action in state court arising out of the Plaintiff's alleged failure to satisfy his debts to Citibank has no bearing on whether this Court has subject matter jurisdiction over the instant case." Id.

plain reading of the statute. The Bank provides no authority to suggest that an alternate interpretation should apply where it is the third party defendant that seeks removal of claims raised by a defendant/third party plaintiff. Cf. Casul, 2004 WL 2202581, at *2 n.1 (barring third-party removal where original defendant was alleged to be a New York domiciliary). Even if the Bank argues that third-party defendants can be included in the definition of "defendants," in the absence of authority to do so, the court declines to read the statute to require the wholesale substitution of a third-party defendant for the term in Section 1441(b). The Bank cannot surmount the problem that third-party defendants lack removal rights, irrespective of the basis for subject-matter jurisdiction.

II. Conclusion

Since the action was not properly removed to federal court and the court lacks subject matter jurisdiction, the court does not reach the Bank's Motion to Dismiss the third party claims, and Massil's Motion to Amend his Third-Party Complaint. The matter is remanded to state court for further proceedings. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York
February 7, 2009

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge